UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **HATTIE WRIGHT,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**BIOMET ORTHOPEDICS, LLC, and BIOMET, INC.**<br><br>        **Defendants.** | Case Number: 3:14-cv-1144<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, HATTIE WRIGHT, by and through her attorneys, PETER J. FLOWERS of MEYERS & FLOWERS, LLC., complaining against Defendants BIOMET ORTHOPEDICS, L.L.C. and BIOMET, INC. and allege:

## PARTIES

1. Plaintiff HATTIE WRIGHT is a citizen of the State of Kentucky and at all relevant times resided in the city of Louisville, Kentucky.

2. Defendant BIOMET ORTHOPEDICS, LLC, is a limited liability corporation. Its sole member is Defendant Biomet, Inc., which is a citizen of Indiana. Therefore, Biomet Orthopedics, LLC is a citizen of Indiana. Biomet Orthopedics, LLC, designed, manufactured, marketed, and promoted, and sold the Device that is subject of this lawsuit. Biomet Orthopedics, LLC marketed, promoted, and sold the Device in Kentucky.

3. Defendant BIOMET, INC. is a corporation organized and existing under the laws of the State of Indiana with its primary place of business in Warsaw, Indiana. Therefore, Biomet, Inc. is a citizen of Indiana. Biomet, Inc. designed, manufactured, marketed, promoted, and sold

1

the Device that is the subject of this lawsuit. Biomet, Inc. marketed, promoted, and sold the Device in Kentucky.

4. At all relevant times herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of its agency and was subject to and under the supervision of its co-defendants.

5. Upon information and belief, at all times herein mentioned, the employees of all Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of the Defendant's subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

6. BIOMET ORTHOPEDICS, LLC and BIOMET, INC. are collectively referred to herein as "Biomet."

**JURISDICTION AND VENUE**

7. This is a civil action of which this court has original jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. Venue for this action lies in the United States District Court for the Western District of Kentucky because the Plaintiffs reside in this District and the wrongful acts upon which this lawsuit is based occurred, in part, in this District. Venue is also proper pursuant to 28 U.S.C. §

1391(c) because Defendants are all corporations that have substantial, systematic, and continuous contacts in the Western District of Kentucky and they are all subject to personal jurisdiction in this District.

9. Plaintiff's state that but for the Order permitting direct filing into the Northern District of Indiana pursuant to this Court's 2/15/13 Case Management Order, Plaintiffs would have filed in the United States District Court for the Western District of Kentucky. Therefore, Plaintiffs respectfully requests that at the time of transfer of this action back to the trial court for further proceedings that this case be transferred to the U.S. District Court for the Western District of Kentucky.

## FACTUAL BACKGROUND

### A. The M2a Magnum Hip System Is Defective and Was Not Adequately Tested.

10. The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

11. A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem; (2) a femoral head; (3) a plastic (polyethylene) liner; and (4) an acetabular shell. After the surgeon hollows out a patient's femur bond, the femoral is implanted. The femoral head is a metal ball that is fixed on top of the

3

femoral stem. The femoral head forms the hip joint when it is place inside the polyethylene liner and acetabular shell.



12. While most hip replacements use a polyethylene *plastic* acetabular liner, Biomet's M2a Magnum Hip System has a critical difference: it is a monoblock system which does not have an acetabular liner. Instead, the M2a Magnum Hip System forces metal to rub against metal with the full weight and pressure of the human body. Because of Biomet's defective design for the M2a Magnum Hip System, hundreds of patients - including HATTIE WRIGHT- have been forced to undergo surgeries to replace the failed hip implants.

13. The M2a Magnum Hip System suffers from a design and/or manufacturing defect that causes excessive amounts of cobalt and chromium to wear and corrode from the surface of the acetabular cup, from the femoral head, and from the taper adapter. These cobalt and chromium fragments prompt the body to react by rejecting the hip implant. This rejection often manifests with symptoms of pain, looseness, dislocation and squeaking and popping sounds. Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissue and bone to die.

14. The design of the M2a Magnum Hip System was not sufficiently tested by Biomet, and it was never approved by the FDA as being safe or effective for the product's intended purpose.

15. On numerous occasions, Biomet met with orthopedic surgeons, including Plaintiff's orthopedic surgeon, to promote the M2a Magnum Hip Implant. At some or all of these meetings, a representative or representatives of Biomet was present. During these meetings, Biomet assured the orthopedic surgeons, including Plaintiff's orthopedic surgeon, that the M2a Magnum Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate. Biomet continued to market and sell the M2a Magnum Hip

Implant even after Biomet became aware of numerous and serious complications with the M2a Magnum Hip System. Biomet did not reveal (and instead concealed) its knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Plaintiff's orthopedic surgeon.

### B. Biomet Sold the M2a Magnum Hip Implant to the Plaintiff After It knew It Was Defective, That It Had Injured Others, and That It Would Injure Plaintiff.

16. Soon after Biomet launched the M2a Magnum Hip System in 2000, failures were reported to Biomet. For example, in August 2004, Biomet received a complaint that a patient had to undergo surgery to remove and replace an M2a Magnum Hip System because it became loose after only three years.

17. Biomet would go on to receive hundreds of similar complaints reporting that the M2a Magnum Hip System had failed and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. To date, more than 350 reports of adverse events associated with the M2a Magnum Hip System have been filed with the FDA.

18. By the time Biomet sold the M2a Magnum Hip System to Plaintiff, numerous reports had been filed with the FDA reporting an adverse event associated with the M2a Magnum Hip System. Consequently, Biomet was fully aware that the M2a Magnum Hip System was defective and that dozens of patients already had been injured by that defect. Based on this information, Biomet should have ensured that patients and surgeons were educated as to the true nature and extent of the risks associated with the M2a Magnum Hip System so that surgeons could make informed decisions as to the treatment options available.

19. Despite its knowledge that the M2a Magnum Hip System had a defect and that it had failed hundreds of times, causing hundreds of patients to undergo the agony of another surgery, Biomet continued to promote, market and defend the defective M2a Magnum Hip System. In so

doing, Biomet actively concealed the known defects and risks associated with the M2a Magnum Hip System from the doctors and patients, including Plaintiff and Plaintiff's doctor, and misrepresented that the M2a Magnum Hip System was a safe and effective medical device.

20. As numerous failures of the M2a Magnum Hip System were reported to Biomet, it continued to actively promote, market and defend the defective products. For example, Biomet published marketing brochures touting the safety and durability of metal-on-metal implants generally, and the M2a Magnum Hip System specifically. These brochures were given to doctors around the world, including Plaintiff's orthopedic surgeon, to encourage them to use the M2a Magnum Hip System.

21. Despite its knowledge that the M2a Magnum Hip System was defective, Biomet made false representations about specific design elements of the M2a Magnum Hip System that Biomet claimed made it superior to other more safe hip implants on the market. For example, Biomet said:

- "The M2a Magnum™ Large Metal Articulation System offers optimal joint mechanic restoration and ultra-low wear rates *in vivo*."

- "Many studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants."

**C. Plaintiff's M2a Magnum Hip System Was Defective and Failed, Forcing Plaintiff To Undergo An Additional Painful and Risky Surgery.**

22. On December 4, 2009, Plaintiff underwent a surgical procedure to implant the M2a Magnum Hip System in her left hip at Baptist Hospital East in Louisville, Kentucky by Dr. Robert A. Goodin. On March 8, 2010, Plaintiff underwent a surgical procedure to implant the M2a Magnum Hip System in her right hip at Baptist Hospital East in Louisville, Kentucky by Dr. Robert A. Goodin. By this time, numerous reports of adverse events associated with the M2a Magnum

Hip System had been filed with the FDA; however, Biomet refused to disclose that information to Plaintiff, Plaintiff's physicians, or the public. Instead, Biomet misrepresented to Plaintiff and Plaintiff's orthopedic surgeon that the M2a Magnum Hip System was safe and effective.

23. As a result of the defective design, manufacture and composition of the M2a Magnum Hip System, and its accompanying warnings and instruction (or lack thereof), Plaintiff's hip implant failed, causing Plaintiff severe pain.

24. On October 30, 2013, Plaintiff had the Biomet hip implant explanted from her left hip at Baptist Health Louisville in Louisville, Kentucky by Dr. Reid Brown. Explantation is a complex, risky, and painful surgery (known as a "revision surgery") to remove the failed M2a Magnum Hip Systems from Plaintiff's body. Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which to place the new hip implants. Further, revision surgeries usually take longer than the original hip replacement surgery and have a higher rate of preoperative and postoperative complications.

25. Plaintiff is at an increased risk of future complications as a result of her revision surgery. For example, several studies have found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery. In one study conducted by Charlotte Phillips and her colleagues at Brigham and Women's Hospital in Boston, 14.4 percent of patients who underwent a revision surgery suffered from a dislocation compared with 3.9 percent of patients who underwent an original hip replacement surgery. In other words, hip replacement patients who have undergone a revision surgery are almost four times more likely to suffer from a hip dislocation than those who have not.

26. As a direct and proximate result of the failure of Plaintiff's defective M2a Magnum Hip System and Biomet's wrongful conduct, Plaintiff sustained and continues to suffer economic

damages (including lost wages, medical and hospital expenses), severe and possibly permanent injuries, pain, suffering and emotional distress. As a result, Plaintiff has sustained and will continue to sustain damages, in an amount to be proven at trial that will exceed the $75,000 jurisdictional minimum of this Court.

## FIRST CAUSE OF ACTION
### (Product Liability – Defective Design)

27. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

28. At all times material to this action, Biomet was responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the M2a Magnum Hip System.

29. The M2a Magnum Hip System is defective and unreasonably dangerous to consumers.

30. The M2a Magnum Hip System is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

31. At all times material to this action, the M2a Magnum Hip System was expected to reach, and did reach, consumers in Florida and throughout the United States, including the Plaintiff herein, without substantial change in the condition in which it was sold.

32. At all times material to this action, the M2a Magnum Hip System was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Biomet in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, the M2a Magnum Hip System contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiff to risks that exceeded the benefits of the subject product, including but not limited to the risks of severe and constant pain and suffering, swelling, lack of mobility, damage to surrounding tissue and bone caused by inflammation, metallosis, pseudotumours, bone erosion and/or the need for additional surgery to repair, remove and/or replace the M2a Magnum Hip System, as well as other severe and personal injuries which are permanent and lasting in nature;

b. When placed in the stream of commerce, the M2a Magnum Hip System was defective in design and formulation, making the use of M2a Magnum Hip System more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with other hip replacement systems on the market;

c. The subject product's design defects existed before it left the control of Biomet;

d. The M2a Magnum Hip System was insufficiently tested;

e. The M2a Magnum Hip System caused harmful side effects that outweighed any potential utility;

f. The M2a Magnum Hip System was not accompanied by adequate instructions and/or warnings to fully apprise consumers and their physicians, including Plaintiff and Plaintiff's physician, of the full nature

and extent of the risks and side effects associated with its use, thereby rendering Biomet liable to Plaintiff;

g.  The M2a Magnum Hip System sold by Biomet was expected to reach, and did reach physicians and consumers, including Plaintiff and Plaintiff's physician;

h.  The M2a Magnum Hip System that was implanted into Plaintiff had not been materially altered or modified prior to the implantation of the device; and

i.  Plaintiff was a foreseeable user of the device and the device was implanted into her for its intended purpose.

33. In addition, at the time the subject product left the control of Biomet, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the product's utility.

34. As a direct and proximate result of the failure of the defective M2a Magnum Hip System, Plaintiff suffered the injuries and damages as described herein.

**SECOND CAUSE OF ACTION**
**(Product Liability – Manufacturing Defect)**
**Against All Defendants**

35. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

36. At all times material to this action, Biomet was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the M2a Magnum Hip System.

37. At all times material to this action, the M2a Magnum Hip System was expected to reach, and did reach, consumers in the State of Illinois and throughout the United States, including Plaintiff herein without substantial change in the condition in which it was sold.

38. At all times material to this action, the M2a Magnum Hip System was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Biomet in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

    a. When placed in the stream of commerce, the M2a Magnum Hip System contained manufacturing defects which rendered the product unreasonably dangerous;

    b. The M2a Magnum Hip System's manufacturing defects occurred while the product was in the possession and control of Biomet;

    c. The subject product was not made in accordance with Biomet's specifications or performance standards; and

    d. The M2a Magnum Hip System's manufacturing defects existed before it left the control of Biomet.

39. At all times material hereto, M2a Magnum Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by Biomet was expected to reach, and

did reach, physicians and consumers, including Plaintiff and Plaintiff's physician, without substantial change in the condition in which it was sold.

40. As a direct and proximate result of the failure of the defective M2a Magnum Hip System, Plaintiff suffered injuries and damages, as described herein.

## THIRD CAUSE OF ACTION
### (Product Liability – Failure to Warn)

41. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

42. The M2a Magnum Hip System was defective and unreasonably dangerous when it left the possession of Biomet in that it contained warnings insufficient to alert physicians and consumers, including Plaintiff and Plaintiff's physician, of the dangerous risks and reactions associated with the subject product, including but not limited to its propensity to cause severe and constant pain and suffering, swelling, lack of mobility, damage to surrounding tissue and bone caused by inflammation, metallosis, pseudotumours, bone erosion and/or the need for additional surgery to repair, remove and/or replace the M2a Magnum Hip System, as well as other severe and personal injuries which are permanent and lasting in nature

43. Plaintiff was implanted with and used the M2a Magnum Hip System for its intended purpose.

44. Plaintiff could not have discovered any defect in the M2a Magnum Hip System through the exercise of reasonable care.

45. Biomet, as manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

46. The warnings that Biomet gave were not accurate, complete, clear and/or were ambiguous.

47. The warnings that Biomet gave failed to properly warn physicians of the increased risks of severe and constant pain and suffering, swelling, lack of mobility, damage to surrounding tissue and bone caused by inflammation, metallosis, pseudotumours, bone erosion and/or the need for additional surgery to repair, remove and/or replace the M2a Magnum Hip System, as well as other severe and personal injuries which are permanent and lasting in nature.

48. Plaintiff, individually and through her treating physicians, reasonably relied upon the skill, superior knowledge and judgment of Biomet.

49. Biomet had a continuing duty to warn the Plaintiff of the dangers associated with the M2a Magnum Hip System.

50. Had Plaintiff received adequate warnings regarding the risks of the M2a Magnum Hip System, she would not have used it.

51. As a direct and proximate result of the failure of the defective M2a Magnum Hip System, Plaintiff suffered the injuries and damages as described herein.

## **FOURTH CAUSE OF ACTION**
**(Negligence)**

52. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

53. At all times herein mentioned, Biomet had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the M2a Magnum Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

54. Biomet maliciously, recklessly, and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the M2a Magnum Hip System.

55. Biomet maliciously, recklessly, and/or negligently made misrepresentations about the safety and effectiveness of the M2a Magnum Hip System to Plaintiff and Plaintiff's orthopedic surgeon. In reliance on these misrepresentations, Plaintiff's orthopedic surgeon decided to use the M2a Magnum Hip Implant in Plaintiff's surgery. But for the misrepresentations made by Biomet, Plaintiff's orthopedic surgeon would not have used the M2a Magnum Hip System in Plaintiff's surgery.

56. Biomet maliciously, recklessly and/or negligently failed in its duty to exercise reasonable care in the provisions of an adequate warning to Plaintiff and Plaintiff's physicians as to the risks of the M2a Magnum Hip System.

57. Biomet maliciously, recklessly and/or negligently failed to exercise reasonable care in the post-marketing warnings as to the risks of the M2a Magnum Hip System when it knew or should have known of said risks.

58. As a result of Biomet's wrongful conduct, Plaintiff suffered injuries and damages as alleged herein.

**FIFTH CAUSE OF ACTION**
**(Breach of Implied Warranties)**

59. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

60. Prior to the time that the M2a Magnum Hip System was used by Plaintiff, Biomet impliedly warranted to Plaintiff and to Plaintiff's physicians that the M2a Magnum Hip System was of merchantable quality and safe and fit for the use for which it was intended.

62. Plaintiff and Plaintiff's physician reasonably relied on the skill, judgment and implied warranty of Biomet in using the M2a Magnum Hip System.

62. The M2a Magnum Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Biomet, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

63. Biomet, by selling, delivering and/or distributing the defective M2a Magnum Hip System to Plaintiff, breached the implied warranty of merchantability and fitness and caused Plaintiff to suffer severe pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

64. As a result of the aforementioned breach of implied warranty by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty)

65. Plaintiff incorporates all of the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

66. At all times herein mentioned, Biomet expressly warranted to Plaintiff and Plaintiff's physicians, by and through statements made by Biomet or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned M2a Magnum Hip System was safe, effective, fit and proper for its intended use.

67. In utilizing the aforementioned M2a Magnum Hip System, Plaintiff and Plaintiff's physician relied on the skill, judgment, representations and foregoing express warranties of Biomet.

68. Said warranties and representations were false in that the aforementioned M2a Magnum Hip System was not safe and was unfit for the users for which it was intended.

69. As a result of the foregoing breach of express warranties by Biomet, Plaintiff suffered injuries and damages as alleged herein.

## PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff demands judgment for the following:

 1. Judgment in favor of Plaintiff and against Biomet, for damages in such amounts as may be proven at trial;

 2. Compensation for past and future economic and non-economic losses, including but not limited to medical expenses, loss of earnings, disfigurement, pain and suffering, mental anguish, and emotional distress, in such amounts as may be proven at trial;

 3. Punitive and/or exemplary damages in such amounts as may be proven at trial;

 4. Restitution and disgorgement of all revenue that Biomet has obtained through the manufacture, marketing, sale and administration of the M2a Magnum Hip System;

 5. Attorneys' fees and costs;

 6. Pre- and post-judgment interest; and

 7. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

**JURY DEMAND**

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.


Dated: October 24, 2014


                                RESPECTFULLY SUBMITTED,

                                MEYERS & FLOWERS, LLC.

                     By: __/s/ Peter J. Flowers_____

                                Peter J. Flowers
                                One of the Attorneys for Plaintiff

Peter J. Flowers (#6210847)
pjf@meyers-flowers.com
Meyers & Flowers, LLC.
3 North Second Street, Suite 300
St. Charles, Illinois 60174
(630) 232-6333
(630) 845-8982